**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| **UNITED STATES OF AMERICA,** | ) |  |
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) | **Case No.: 25-CR-20257-SHL** |
| **v.** | ) |  |
|  | ) |  |
| **GLENN DAVIS,** | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |
|  | ) |  |

_____

**MOTION TO SUPPRESS
AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**
_____

COMES NOW Defendant Glenn Davis (herein Mr. Davis), by and through his undersigned counsel, Kevin P. Whitmore, hereby files his Motion to Suppress and Incorporated Memorandum of Law in Support. Mr. Davis seeks to suppress any and all evidence associated with and derived from officer's illegal stop of his vehicle and later search of his vehicle.   This Motion is well supported by the following reasons:

**STATEMENT OF THE FACTS**

On October 3, 2025, a Task Force officer illegally stopped Mr. Davis while he was driving on Hollywood Street in Memphis, Tennessee. The evidence that proves the illegal stop consists of the videos from the officer's vehicle camera and the officer's Body Worn Cam (BWC).

The video from the officer's vehicle camera shows the officer traveling a short distance on Chelsea Street before making a right turn onto Hollywood Street. Hollywood Street is a four-lane street (two lanes in each direction) with a turning lane in the middle. Shortly before the officer makes his left turn on Hollywood Street, an individual driving a black truck makes a right turn on Hollywood Street a few seconds before the officer. The individual in the black truck drives in the far right lane and the officer drives in the lane next to the individual. Approximately nine seconds into the video, the officer and the individual in the black truck are both traveling on Hollywood Street, but the black truck is traveling several feet ahead of the officer's vehicle. There appears to be no cars in close proximity ahead either vehicles.

The black truck continues to travel in the far right lane ahead of the officer's vehicle until 27 seconds into the video, when the officer's vehicle catches up to the black truck. Approximately two seconds later (29 seconds into the video), the officer activates his siren, and it appears the officer is activating his siren to pull over the individual in the black truck. However, the officer increases his speed and continues traveling past the black truck and pulls over a black Silverado truck, being driven by Mr. Davis, some distance ahead of him.

Responding to the officer's siren, Mr. Davis pulls over his truck. The officer driving, along with several officers, approached Mr. Davis's truck.

Video captured by the officer's BWC reveals practically the same as stated above but from a different vantage point, that is, from inside the officer's vehicle. It is important to note the BWC video shows the officer traveling behind the individual in the black truck

2

and at 22 seconds and again at 24 seconds into the video, the officer appears to raise his left hand off his steering wheel to glance at his speedometer.    At this point, the individual in the black truck is still traveling ahead of the officer, and the black Silverado, being driven by Mr. Davis, is a considerable distance ahead of the officer.    (In fact, if one freezes the video at 24 seconds, one cannot clearly see Mr. Davis's black Silverado truck ahead of the officer.).

At the time the officer activates his siren at approximately 28 or 29 seconds, the black Silverado remains some distance ahead of the officer.    When the officer pulls over Mr. Davis, the officer approaches his truck and states, "I stopped you because you crossed a little in the left turning lane, but you were going 50 in a 40."    The officer then asked Mr. Davis for his license and registration.    Mr. Davis provided his license and registration.

Considering the distance that Mr. Davis was traveling ahead of the officer and the time (22 and 24 seconds into BWC video) when the officer glanced at his speedometer and considering the time (28 or 29 seconds into vehicle camera video) when the officer activated his siren to stop Mr. Davis who remained a considerable distance ahead of the officer, the officer's utilization of pacing alone (without radar detection) could not determine that Mr. Davis was traveling 50 mph in a 40 mph speed limit zone.    Mr. Davis allegedly driving 50 mph in a 40 mph speed limit zone was the reason for the officer's stop. Thus, the officer had no legal basis to stop Mr. Davis and as a result, the search thereof was illegal and the fruits from the illegal search must be suppressed in accordance with the officer's violation of Mr. Davis's Fourth Amendment rights.

**LEGAL ANALYSIS**

The Fourth Amendment guarantees the "rights of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.    Moreover, temporary detention of an individuals during a stop of an individual's vehicle, even if for a brief period and for a limited purpose, constitutes a "seizure of persons" within the meaning of the Fourth Amendment.    *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "[I]n determining if [a] traffic stop violates the Fourth Amendment," a court must inquire "whether the officer 'had an objectively verifiable reason' for pulling over Defendant's [vehicle] in light of the facts and circumstances known to the officer at the time of the stop." *United States v. Huff*, 630 F. App'x 471, 496 (6th Cir. 2015) (quoting *United States v. Tullock*, 578 F. App'x 510, 513 (6th Cir. 2014)); *see also United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (noting the probable cause determination is "fact-dependent and will turn on what the officer knew at the time he made the stop"); *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (an officer must have facts and circumstances within her knowledge "of which [she] had reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense") (citing *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). The Sixth Circuit has found officers' utilization of "pacing" to determine a speeding violation was sufficient to establish probable cause to stop a vehicle.    *United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005).

However, the instant case tests the definition of pacing and the limitations of officers' utilization of pacing to determine a speeding violation.    Recently, the Sixth

Circuit Court of Appeals decided *United States v. Conner*, a case that originated in the Western District addressing the limits of pacing. *United States v. Conner,* 2026 WL 117092 (6th Cir. January 15, 2026). In *Conner*, an officer observed a Dodge Durango speeding on American Way when the posted speed limit was 45-mile-per-hour. *Id.* at *1. An officer paced the Durango for "probably a quarter mile" and recorded the Durango's speed at 60-mile-per-hour. *Id.* Additionally, the officer contacted another officer in the area and told him to be on the lookout for the speeding Durango. *Id.*

The second officer observed the Durango and paced it for "just under a minute, recording its speed at 48 to 50 miles per hour in the same 45-mile-per-hour zone." *Id.* The second officer activated his siren and pulled over the Durango. *Id.* The second officer approached the vehicle and observed from looking through the car window a magazine in the car. The driver, Conner, fled from the vehicle. *Id.* Officers later found a gun in the vehicle. *Id.* at *2. When Conner was later apprehended, officers determined that he was a convicted felon and Conner was later charged with being a felon in possession of gun. *Id.*

Conner challenged the stop of his vehicle and the resulting search of his vehicle. *Id.* at *2. Conner asserted there was "no conclusive evidence to suggest that he was actually speeding," and thus, the officer did not have probable cause to stop his vehicle. *Id.* at *3.

The magistrate issued a Report and Recommendation, recommending the District Court to deny the motion to suppress. *Id.* at *3. The District Court adopted the

5

Magistrate's Report and Recommendation, denying the motion.[1]  *Id.*    Conner appealed. *Id.*

The Sixth Circuit began its discussion by stating, "[w]e have consistently endorsed the use of pacing as an appropriate method to measure speed in Fourth Amendment cases. *Id.* at \*4.   The Court noted Conner argued that the "pacing method used by the officers could not have adequately measured his speed, primary because they did not pace him for long enough." *Id.* at \*4.   However, the Sixth Circuit stated it had endorsed pacing where police officers paced a vehicle for less time than the officers paced Conner, citing *United States v. Puckett*. 422 F.3d 340 (6th Cir. 2005). *Id.*

In *Puckett,* officers paced the speeding vehicle for "several blocks."   *Id (citing Puckett*, 422 F.3d at 342). The Court was dismissive of Puckett's claim that "[the officer] followed him for only a few seconds." The District Court and the Sixth Circuit's conclusions were primarily based on the fact that the officer paced Puckett for "several blocks" and "[b]y the admission of [Puckett's] own expert, [Puckett] was speeding." *Puckett*, 422 F.3d at 343.

In *Conner,* the Court also noted similarly in *United States v. Hill*, it found officers "had probable cause to stop a speeding car after pacing… the vehicle for three-fourths of a mile. *Id (citing United States v. Hill*, 195 F.3d 258, 261 (6th Cir. 1999).   In *Hill, "*[w]hen the speed of Deputy Whitlock's vehicle and the speed of the U-Haul were the same, Deputy Whitlock checked his certified speedometer, which showed a reading of sixty-two miles per hour." *Hill,* 195 F.3d at 261.   The speed limit was 55 miles per hour. *Id.*

---

1 Judge Fowlkes was the District Court Judge.

6

However, the *Hill* Court never reached the decision whether three-fourths of a mile was sufficient pacing distance, because "Defendants [did] not dispute the fact that they were traveling in excess of the posted speed limit…Therefore the district court properly concluded that Officer Whitlock had probable cause to make the initial traffic stop." *Id.* at 265. The *Hill* Court's sole issue was the motivation of the officer for stopping Hill's vehicle. *Id.*

Nevertheless, the Sixth Circuit concluded "officers paced [Conner] for significantly longer than officers in *Hill* and *Puckett*." *Id.* at *4. The Court then delineated its analysis:

> Officer Roberts paced the Durango for .25 to .3 of a mile, or 5 to 10 seconds, and estimated its speed to be 60 miles-per-hour in a 45 mile-per-hour zone; he then alerted Officer Walker, who further paced the vehicle for just under a minute, recording its speed at 48 to 50 miles in the same 45 mile-per-hour zone. In total, they paced Defendant for, at minimum, around a mile, *see* n.2, which was more than sufficient to record the vehicle's speed.

*Id.* The Court further asserted the following in the reference footnote:

> The government contends that Officer Walker paced the Durango for 1.1 miles, which it calculates based on the assumption that he followed the car for a minute and 23 seconds at 48 miles per hour. *See* Appellee's Br. at 19, n. 4. The district court, however, found that Officer Walker tailed the Durango for just under a minute. *See* Amended R&R, R.78, Page ID #124. Even if we take a very modest estimate of the distance for which Officer Walker paced the Durango—say, travelling 50 miles/hour for 50 seconds— he still would have paced it for at least 0.7 miles.

*Id.* at *11, n. 2. The Court also noted MPD's own policies "instruct officers to follow the speeding vehicle at a constant interval for a distance adequate, normally two or more blocks, to obtain a reading on a speedometer indicating a speed exceeding that posted." *Id.* at 5. Thus, the Sixth Circuit concluded the amount of time officers paced Conner was

sufficient to provide probable cause Connor was speeding, justifying the stop of his vehicle. *Id.*

Juxtaposing the facts supporting the stop in *Conner*, *Puckett,* and *Hill* to the instant case, the officer failed to have adequate evidence through pacing alone to support his stop of Mr. Davis's vehicle. This is readily demonstrated in the below chart*:*

| CASE | DISTANCE | TIME |
|---|---|---|
| *CONNER* | 1.1 or "around a mile" | "a little less than a minute" |
| *PUCKETT* | "several blocks" | Indicating more than a few seconds |
| *HILL* | "three-fourth of a mile" | Indicating more than a few seconds |
| DAVIS | Much less than ¾ of a mile<br>Much less than several blocks | Only 4 to 5 seconds |

The question is when is pacing not pacing? There must be sufficient distance or time to qualify as pacing.    As noted above, in *Conner*, the Court aggregated the distance and time of two officers who paced Conner's vehicle for more than a mile and around a minute. *Conner,* 2026 WL 117092 at *4    In *Puckett*, the Court dismissed Puckett's argument that officers paced him only seconds but stressed that officers paced Puckett for "several blocks" indicating much longer than seconds.    *Puckett*, 422 F.3d at 342-343. In *Hill*, the Court stressed the officer paced Hill "three-fourths of a mile," also indicates more than just a few seconds.    *Hill*, 195 F.3d at 261.

In the instant case, combining the video evidence from the vehicle camera and BWC, the officer paced Mr. Davis for only four to five seconds.    Additionally, unlike in *Conner* and *Hill,* the officer did not pace Mr. Davis for approximately a mile or even three-

fourths of a mile, but only what probably amounts to 100-200 feet. Thus, unlike in *Conner,* where the Sixth Circuit stated, "officers paced [Conner] for significantly longer than the officer in *Hill* and *Puckett,*" the government cannot cite one case that endorsed an officer stopping a vehicle after pacing the vehicle for only a few feet and a few seconds.   The question remains:   when is pacing not pacing? The instant case provides a clear example when pacing is not pacing.   Therefore, the officer did not have probable cause to stop Mr. Davis.

Thus, because the officer did not have probable cause to stop Mr. Davis, any search thereof and fruits of the search must be suppressed.

WHEREFORE, Mr. Davis very respectfully request the motion to suppress be granted.

Respectfully submitted,


*/s/ Kevin P. Whitmore*
Kevin P. Whitmore #021293
THE LAST CHANCE LAW FIRM, PLLC
301 Washinton Avenue, Suite 202
Memphis, Tennessee 38103
(901) 461-1039
whitmore@lastchancelaw.com


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been served electronically to the government's representative/counsel via the Court's ECF system this 2nd day of February 2026.

*/s/Kevin P. Whitmore*

9