**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-20257-SHL |
| | ) | |
| GLENN DAVIS, | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Defendant Glenn Davis filed a Motion to Suppress Evidence on February 2, 2026.  (ECF

No. 46.)  The Government responded on February 17, 2026.  (ECF No. 49.)[1]  The Court

conducted a hearing on the Motion on March 25, 2026.  (ECF No. 57.)

In the Motion, and again at the hearing, Davis sought "to suppress any and all evidence

associated with and derived from [the] officer's illegal stop of his vehicle and later search of his

vehicle."  (ECF No. 46 at PageID 74.)  The Government counters that officers had evidence of

two moving violations that provided probable cause to conduct the traffic stop of Davis, and that

the reasonable suspicion that justified the traffic stop ripened into probable cause to search his

vehicle.  (ECF No. 49 at PageID 86–87.)

For the reasons that follow, the Motion is **GRANTED**.

**BACKGROUND**

The following facts are based on the Parties' filings and the evidence presented at the

Hearing, including the dash camera and body-worn camera footage obtained from Trooper Chas

---

[1] On March 17, 2026, the Government filed an amended response in which it withdrew its reliance on United States v. Sanford, 476 F.3d 396 (6th Cir. 2007), explaining that the case did not support the proposition referenced in its original response.  (ECF No. 56.)

Billiter.  On October 3, 2025, Billiter was parked at a gas station off Hollywood Street in Memphis, where he "had information about some illegal dealings" and he and other officers "were kind of stopping cars coming from in and out" of the gas station.  From this gas station, he pulled out onto Hollywood and ultimately pulled over Davis, who was driving his truck. According to Billiter, Davis committed two separate traffic violations that provided probable cause to pull him over: Davis was both speeding and failing to maintain his vehicle in his traffic lane.  (ECF No. 49 at PageID 87.)

At the March 25, 2026 hearing on the Motion, the Government presented video evidence from the traffic stop to support its assertion that probable cause existed to make a traffic stop of Davis's truck.  Both videos open with Billiter making a slow left turn onto Hollywood, completing the turn at about timestamp 0:09.  Billiter then speeds up to approach a vehicle that appears to be rather distant, perhaps as much as a city block ahead.[2]  Billiter continues to accelerate, driving with his left hand atop the steering wheel.  Then, at timestamp 0:22, he lifts his hand off the wheel once, and then again around 0:25.  He testified that the reason he lifted his hand twice was to "chec[k] how fast I was going" to "gauge my speed and [Davis's] speed."[3]  At 0:29, the video, which is silent until this point, begins to play audio, revealing that the vehicle's siren has been activated to initiate the traffic stop.  After pulling Davis over, Billiter explains to him, "I stopped you because you crossed a little in the left turning lane, but you were going 50 in a 40."  (ECF No. 46 at PageID 76.)

---

[2] Testifying at the Hearing about the footage, Billiter stated that the distance between him and the distant truck was "not as far as it looks."

[3] On cross-examination, Billiter stated, "I just lifted my hand to get a little bit better view. I can already see past my hand because it's wrapped around the steering wheel."

During the traffic stop, officers found a brown bag that contained marijuana under the driver's seat and a handgun under the rear passenger seat.  (ECF No. 49 at PageID 85.)  Davis is a convicted felon, and was eventually charged with violating 18 U.S.C. § 922(g)(1).

Davis argues that Billiter did not have probable cause to pull him over, as, given the circumstances surrounding his traffic stop, Billiter could not have determined that he was speeding using the pacing method he described.

**APPLICABLE LAW**

The Fourth Amendment "requires that all searches and seizures be supported by probable cause."  United States v. Crumb, 287 F. App'x 511, 513 (6th Cir. 2008) (citing Maryland v. Pringle, 540 U.S. 366, 369 (2003)).  A search must normally be conducted pursuant to a valid warrant.  Id.  However, "under the well-known automobile exception, a warrantless search of a vehicle that has been stopped lawfully is permissible if the search is based upon probable cause."  Id. (citing United States v. Ross, 456 U.S. 798 (1982)).  "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search."  Id. (quoting United States v. Jackson, 470 F.3d 299, 306 (6th Cir. 2006)).

A traffic stop by police is a "seizure" governed and limited by the Fourth Amendment.  United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008).  The subjective intent of officers "is irrelevant" when evaluating the validity of a traffic stop.  United States v. Collazo, 818 F.3d 247, 253 (6th Cir. 2016) (citing Blair, 524 F.3d at 748).  For civil infractions, an officer must have probable cause to conduct a traffic stop.  Id. at 253–54 (quoting Blair, 524 F.3d at 748).  If the Government disregards these rules, a defendant may move to exclude the evidence gathered

against him.  United States v. Haygood, 549 F.3d 1049, 1053 (6th Cir. 2008).  "A defendant who

files a motion to suppress bears the burden of proving that the challenged search or seizure

violated his Fourth Amendment rights."  United States v. Nailor, 683 F. Supp. 3d 678, 682 (E.D.

Mich. 2023) (citation omitted).  "The Government, on the other hand, has the burden of proof to

justify a warrantless search."  Id. (citing United States v. Haynes, 301 F.3d 669, 677 (6th Cir.

2002)).

### ANALYSIS

In his Motion, Davis argues that there was no probable cause to pull him over because

Billiter could not have paced him for a sufficient length of time under Sixth Circuit precedent.

But the Government's response raises a second justification for pulling him over—failure to stay

in his lane.  Davis does not challenge the legality of the search that commenced,[4] instead

asserting that, without a basis for the stop, the search of the truck that followed "was illegal and

the fruits from the illegal search must be suppressed in accordance with the officer's violation of

Mr. Davis's Fourth Amendment rights."  (ECF No. 46 at PageID 76.)  As explained below,

neither of the Government's proposed justifications supports probable cause for the traffic stop.

I.    **Speeding**

One justification for the traffic stop was that Davis had been speeding, "going 50 in a

40."  (ECF No. 46 at PageID 76.)  Although Billiter did not use radar to record Davis's speed,

the Government asserts that he followed Davis to "pace" him, that is, to clock Davis's speed with

his own vehicle's speedometer, for twenty seconds, which, according to the Government, is

sufficient time under Sixth Circuit law.  (ECF No. 49 at PageID 88.)

---

[4] It is unclear how Davis could make such an argument, as Davis gave Billiter permission
to search his vehicle.  (See ECF No. 49 at PageID 85.)

4

Davis, however, argues that Billiter could not have determined his speed by pacing, based on the facts of the case, as corroborated by the officer's video footage. Ultimately, Davis asserts that the "case tests the definition of pacing and the limitations of officers' utilization of pacing to determine a speeding violation." (Id. at PageID 77.)

Davis asserts that the officer spent only four or five seconds pacing him, which amounts to 100-to-200 feet, according to Davis. (Id. at PageID 81–82.) He contends that under two Sixth Circuit cases on which both Parties rely—United States v. Conner, 2026 WL 117092 (6th Cir. Jan. 15, 2026), and United States v. Puckett, 422 F.3d 340 (6th Cir. 2005)[5]—that amount of time and distance is insufficient to make a pacing determination, and, in the absence of any other violation, would not support probable cause to pull him over.[6]

In Conner, an officer paced the defendant for "probably a quarter mile" until the defendant pulled into a parking lot. 2026 WL 117092, at *1. The defendant then drove off again, and another officer paced him "for just under a minute" before pulling him over for speeding. Id. The court found that pacing a vehicle for this distance and time was sufficient to

---

[5] Davis also cites to United States v. Hill, 195 F.3d 258 (6th Cir. 1999), whose conclusions are consistent with Conner and Puckett.

[6] Davis includes a table, below, that compares the facts in this case to the facts in other Sixth Circuit cases where it was determined that pacing was appropriate. The Government does not challenge the facts from the table, other than those asserted as to Davis.

| CASE | DISTANCE | TIME |
|---|---|---|
| CONNER | 1.1 or "around a mile" | "a little less than a minute" |
| PUCKETT | "several blocks" | Indicating more than a few seconds |
| HILL | "three-fourth[s] of a mile" | Indicating more than a few seconds |
| DAVIS | Much less than ¾ of a mile Much less than several blocks | Only 4 to 5 seconds |

establish probable cause.  Id. at *4–5.  In Puckett, an officer paced the defendant "for several blocks," which the court likewise found sufficient.  422 F.3d at 343.

First, the Court finds that Billiter could not have paced Davis for twenty seconds because the two vehicles were travelling at different speeds for a significant portion of that time.  For much of the twenty seconds between timestamp 0:09, when Billiter completes his left turn onto Hollywood, and 0:29, the first moment when the siren becomes audible, Billiter is accelerating to match the speed of Davis's truck, which is well ahead of him.  Because pacing requires two vehicles to travel the same speed, pacing could not produce a reliable result while the officer's vehicle was accelerating.

Indeed, it appears from the video evidence and Billiter's testimony that he began pacing at the 0:22 timestamp, when Billiter first verified his speed by raising his hand.  Although he testified that he could see his speedometer at all times, he raised his hand twice at timestamps 0:22 and 0:25 to "get a little bit better view" of his speed.  In the following exchange with defense counsel, Billiter stated that he was up to speed at the 0:22 mark in the videos, but raised his hand to "verify" it for purposes of pacing:

> Q: Now, when it comes to pacing it's very important that you know your speed correct?
> Billiter: Yes, sir.
> Q: And in fact that's the reason when you were getting ready to pace [Davis] or getting ready, you looked at your speedometer?
> Billiter: Yes, sir.
> Q: And so you looked at your speedometer to get your speed and then in fact you looked at it again?
> Billiter: Yes, sir.
> Q: And that was giving you your speed to start the pacing?
> Billiter: So I was up to speed when I was looking at it and I was gauging his speed.
> Q: Right.  But you had to at least know your speed.  If you notice on the video . . . , you in fact move your hand and you look at your speed and that's your speed now and you go, I'm going 50 miles per hour; is that correct?

Billiter:    Yes, sir.

Q:          And then . . . you looked at it again, at 25 seconds?

Billiter:    I believe so.

Q:          Okay.  Now, that's giving you your benchmark of speed at that particular time, correct?

Billiter:    So I was already—I was up to speed prior to looking at my—lifting my hand.

Q:          Well, why did you have to raise your hand?

Billiter:    Well, I have to check to verify my speed.

If Billiter verified his speed at timestamp 0:22 and initiated his blue lights by 0:29, that would yield a pacing time of seven seconds.  The Court is unaware of any case that has found that seven seconds is sufficient time for a pacing determination to support probable cause, and none of the cases cited by the Government supports such a conclusion.  However, the Court need not find that the pacing lasted seven seconds to decide the issue; the fact that Billiter paced Davis for significantly fewer than twenty seconds supports the finding that he lacked probable cause to effect a traffic stop for speeding.

The most likely explanation for Billiter's abbreviated pacing is the one he gave at the hearing—that he activated his lights originally, not for speeding, but for a lane violation.

Q:          Now, from the time that you register your speed at I think we said 22, 25 [seconds,] do you know how many seconds it was before you turned on your sirens?

Billiter:    I don't have a—I don't recall the exact seconds.

Q:          Do you remember the prosecutor saying right at 29 seconds that you activated your—you activated—

Billiter:    Yes, sir.  But that was for a different violation.  That was for the failure to maintain his lane.

Q:          So you're saying that at the time that you activated your siren you said he continued to speed or would he have reduced his speed at the time you activated your siren?

Billiter:    No.  What I'm saying is the initial reason for the stop was for the lane violation.

It appears that Billiter could not have made an accurate pacing assessment of Davis's speed in the light of Sixth Circuit precedent.  Pacing a vehicle for significantly fewer than twenty

7

seconds does not establish probable cause to effect a traffic stop for speeding.  The distance falls short of the "several blocks" and "around a mile" approved of in the Sixth Circuit.  The only remaining justification that could support probable cause for the traffic stop, therefore, is Davis's alleged lane violation.

## II.      Lane Violation

The Government argues that Billiter had probable cause to stop Davis because he "fail[ed] to maintain his vehicle in a single lane."  (ECF No. 49 at PageID 89.)  At the Hearing, Billiter testified that he flipped on his blue lights to initiate the stop "as soon as I seen him cross over this yellow line into the turn lane."

Under Tennessee law, a driver must operate a vehicle "as nearly as practicable entirely within a single lane" and must not change lanes "until the driver has first ascertained that the movement can be made with safety."  Tenn. Code Ann. § 55-8-123(1).  However, the Government cites no case finding that a lane violation alone can establish probable cause for a traffic stop.  In fact, the one case it does directly cite stands for a different proposition.  The Government states that "the Sixth Circuit has held that observing a vehicle cross the lane line provides an objective basis for a stop, even if the violation is minor," and cites United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008).  (ECF No. 49 at PageID 87.)  But Blair says nothing of the sort.  There, an officer pulled over Blair for a "'tag-light' (i.e., a license plate light) violation," Blair, 524 F.3d at 745, and the case does not mention a lane violation—or even so much as the word "lane."

The only other case the Government mentions elsewhere in the same section of its response, United States v. Simpson, 520 F.3d 531 (6th Cir. 2008), actually contradicts the Government's assertion.  (See ECF No. 49 at PageID 87.)  In discussing whether the standard

8

governing a traffic stop is probable cause or reasonable suspicion, the Simpson court cites an earlier opinion in which "'one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and [at] an instant in time' did not give the officer probable cause." 520 F.3d at 539–40 (quoting United States v. Freeman, 209 F.3d 464, 466 (6th Cir. 2000)).

It is troubling that the Government built its argument for the lane violation—one of only two issues in this matter—based on two cases, Blair, which appears completely irrelevant, and Simpson, containing language opposite from the Government's contention. The Government is **ORDERED** to file a report on these possible misrepresentations to the Court, including whether it believes the citations are proper and, if not, how the misrepresentations occurred and how they will not occur again.

Davis cited two cases at the Hearing to argue that a mere failure to maintain a lane does not provide probable cause for a stop unless the driver is displaying "erratic driving" or "unsafe driving." In United States v. Warfield, 727 F. App'x 182 (6th Cir. 2018), an officer testified that he saw the vehicle "weaving a little bit" and "that the car's tires touched the solid lane line and the hash line dividing the lanes." Id. at 184. But the court held that "[m]erely touching a lane line is not a violation of Ohio's marked lane statute," and noted that the language of the Ohio and Tennessee statutes is "nearly identical." Id. at 186. Compare Ohio Rev. Code Ann. § 4511.33 ("A vehicle . . . shall be driven, as nearly as is practicable, entirely within a single lane . . . ."), with Tenn. Code Ann. § 55-8-123(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane . . . .").

Similarly, in United States v. Gross, 550 F.3d 578 (6th Cir. 2008), the defendant was pulled over for "straddling" two lanes at the point where a mountainous stretch of highway

9

widens from two to three lanes. 550 F.3d at 580–81. The court held that lane-straddling, "essentially a slow lane change," was not a traffic violation "[w]ithout some further allegation of erratic or improper driving." Id. at 583.

Here, the Government does not allege any erratic or improper driving on Davis's part, outside of the allegation of speeding. It simply alleges that Davis began to cross into a turn lane. But crossing lanes, without more, does not violate the statute. Rather, the statute requires a driver to stay in one lane "as nearly as practicable" and to effect a lane change "with safety." Tenn. Code Ann. § 55-8-123(1). This is hardly the bright-line rule that the Government makes it out to be. Because there is no indication that Davis was driving erratically, and because the Government's allegation of speeding fails, as discussed above, Billiter lacked probable cause to pull Davis over for either of its proffered reasons.

## CONCLUSION

Because Billiter lacked probable cause to stop Davis's vehicle for either speeding or a lane change violation, and thus the traffic stop was unjustified at its inception, the evidence obtained from the subsequent consent search must be suppressed. The Motion is therefore **GRANTED**. The Government is further **ORDERED** to explain its questionable use of Sixth Circuit precedent before the Court and the steps it will take to prevent future misrepresentations, if they occurred here.

**IT IS SO ORDERED,** this 10th day of April, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

10